| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **TO BE FILED**<br>**UNDER SEAL** |

------------------------------------x

In the Matter of the Arbitration of                    :   Docket No. _____

SECURITY INSURANCE COMPANY OF HARTFORD      :
Itself and as Successor in Interest to                 :
THE FIRE AND CASUALTY INSURANCE COMPANY   :
OF CONNECTICUT and THE CONNECTICUT         :
INDEMNITY COMPANY,                          :
                                            :
                            Petitioner,   :
                                            :
                         -against-    :
                                            :
COMMERCIAL RISK REINSURANCE COMPANY         :
LIMITED (BERMUDA) and COMMERCIAL RISK RE-   :
INSURANCE COMPANY (VERMONT),                :
                                            :
                           Respondents. :

------------------------------------x

Eugene Wollan, being duly sworn, deposes and says:

1. I am an attorney admitted to practice in New York, as well as in the Southern and Eastern Districts of New York and the Second Circuit Court of Appeals. I am counsel to (formerly Senior Partner of) the firm of Mound Cotton Wollan & Greengrass.

2. Since the mid-1960s my practice has focused largely on reinsurance, and particularly on reinsurance disputes. I am the author of a treatise entitled <u>Handbook of Reinsurance Law</u>, published by Aspen Law and Business (2002), and over one hundred articles, most of them dealing with reinsurance. I served for two terms (the term limit) as Vice President, member of the Executive

Committee, and member of the Board of Directors of ARIAS-U.S., the AIDA Reinsurance and Insurance Arbitration Society (AIDA denotes Association Internationale de Droit des Assurances), which is generally considered to be the foremost U.S. reinsurance arbitration organization. I have been described in recent peer surveys as "dean" of the U.S. reinsurance bar, and named as one of the five leading insurance/reinsurance lawyers in the U.S. (and one of the leading twenty in the world). Attached as Exhibit A is a copy of my page from the firm's website.

3. I have acted as counsel in over 125 reinsurance arbitrations, and have served as party-appointed arbitrator in twelve and as umpire in seven.

4. I have examined the arbitration clauses in the treaties at issue in this case. They are relatively standard. In the usual course, party arbitrators, although nominally chosen by the parties, are in reality chosen by counsel, with varying degrees of consultation with their respective clients. The two party arbitrators then attempt to agree on the third arbitrator, the umpire. Here too the actual moving force is invariably counsel, in consultation with the arbitrator and, again to varying degrees, the client.

5. I have also reviewed various items of pleading and correspondence furnished to me by counsel for the cedents.

6. The arbitration clauses here provide for a default procedure (resort to the American Arbitration Association) if the arbitrators cannot agree on an umpire. This is not unusual, but it is also not the most common default procedure. I am

advised that in this case the parties agreed on what is actually the most frequently used procedure: each party names three candidates, the other party strikes two names, and one is chosen by lot from the two remaining names (one from each side). At one time this selection was made by a coin toss, but modern technology permits it to be done without a physical meeting, for example, by agreeing in advance on an odd/even choice for the final digit in the Dow Jones average on a particular day. The contractual provisions for umpire selection are contemplated to apply at the inception of the entire process; there is nothing in the language itself or in industry practice or understanding to suggest that it is intended to apply in a situation such as this one.

7. I am advised that at the Organizational (initial) Meeting in this arbitration, the qualifications of the Panel members were explored in the usual fashion, the entire Panel was accepted by the parties as constituted, and the customary Hold Harmless Agreements were executed by the parties in favor of all three Panel members.

8. It is considered a truism in the world of reinsurance arbitrations that, while the party arbitrators serve to some extent as advocates as well as adjudicators, the umpire is genuinely neutral and has been selected on that understanding.

9. I understand the present situation in this arbitration to be this: Some time after the Organizational (original) Meeting, but before the scheduled Hearing on the merits, the party arbitrator for the reinsurer "withdrew" without explanation, and the reinsurers then took the position that the parties must in effect "go back to

square one," that is, the cedents must appoint (or reappoint) their arbitrator, and the umpire selection process must begin all over again.

10. In my experience it is extremely rare for a party arbitrator to withdraw without explanation (indeed, it is quite rare for an arbitrator to withdraw even with an explanation), and on those occasions when it does happen, it is literally unheard-of for the status of the arbitration to regress to inception.

11. I have never before heard of anything like what is being urged by the reinsurers even being advocated, much less actually being done. I am aware of several instances in which arbitrators had to be replaced mid-stream for various reasons (usually health-related), and in those cases a replacement arbitrator was appointed and the arbitration proceeded on its course.

12. I have personally been involved in two such instances. In one, I was acting as counsel for a party and our party arbitrator felt it necessary to resign for personal reasons; a qualified successor was named, and the case moved on. In the other, I was named to replace an umpire who had resigned; I had a certain amount of homework to do to bring myself "up to speed" but the progress of the proceeding was not impaired.

13. I understand that in this arbitration, since the Organizational Meeting and a ruling requiring this posting of security (which has been complied with), there have been no interlocutory proceedings before the Panel and no rulings by it. It is difficult to see any reason why a replacement arbitrator could not slip into the role quite readily, or any reason why the reinsurers would be prejudiced as a consequence.

14. In my opinion the position taken by the reinsurers is not only unprecedented but totally irrational. It contradicts the very reason why arbitration is the preferred method of dispute resolution between cedents and reinsurers -- to obtain closure in the most efficient, most expeditious, and least costly fashion. To adopt this position would invite chaos instead of fostering closure.

15. The implications of the reinsurers' position are staggering. Any party or counsel in an arbitration who was unhappy with the Panel's rulings up to that point, or with a perceived adverse leaning on the part of the umpire, or even with the way things were going generally, could simply arrange for its arbitrator to "withdraw" and thus get to start all over again. One can only speculate as to the reinsurers' motivation here.

16. In golf there are "mulligans," and in tennis there are "lets," but there are not and should not be any "do-overs" in reinsurance arbitrations.

s/_____
Eugene Wollan

Sworn to before me this
23rd day of April, 2007

_____
Notary Public

BRUCE R. KALINER
Notary Public, State of New York
No. 60-4960744
Qualified in Westchester County
Commission Expires Jan. 2, 2010

**EXHIBIT A**



# Eugene Wollan

New York, New York
*Of Counsel , since 1992*
*Partner 1963-1992*
**phone** (212) 804-4222
**fax**    (212) 344-8066
**email**  ewollan@moundcotton.com

**Eugene Wollan**

Eugene Wollan, a graduate of Harvard College (cum laude) and Harvard Law School, has concentrated for forty-eight years on property and casualty insurance claims litigation, commercial insurance litigation, and reinsurance controversies. He is the Author of the Treatise Handbook of Reinsurance Law (Aspen Law & Business, 2002). He is co-author with Arthur N. Brook of the chapter on Property Insurance contained in Business Insurance Law and Practice Guide (Matthew Bender, 1989) and with Lawrence S. Greengrass of the chapter on Arbitration of Reinsurance Cases contained in Prosecuting and Defending Insurance Claims (John Wiley & Sons, 1989). Mr. Wollan's articles have appeared in Best's Review , ReActions , Reinsurance , Insurance and Reinsurance Law International , International Insurance Monitor , Insurance Counsel Journal , The United States Reinsurance Report , and Insurance Advocate , and he is a contributing editor on insurance law of The John Liner Review. Mr. Wollan is a member of the Property Insurance Committee and the Reinsurance Committee of the International Association of Defense Counsel, and of the International Society of Barristers, L'Association Internationale de Droit des Assurances (AIDA), the Defense Research Institute, the Association of the Bar of the City of New York, and the New York County Lawyers' Association. He has served as Vice President, Executive Committee member, and member of the Board of Directors of AIDA Reinsurance and Insurance Arbitrators Society (ARIAS-US). He has lectured at seminars and meetings sponsored by, among others, the Defense Research Institute, Tort and Insurance Practice Section of the American Bar Association, ARIAS-US, Mealey's, Euroforum, Loss Executives Association, Insurance Information Institute, Inland Marine Underwriters Association, Executive Enterprises, Inc., New South Wales Reinsurance Discussion Group, Australian Reinsurance Rendezvous, and Australian Insurance Law Association. Mr. Wollan has served as an expert witness and as umpire and arbitrator in insurance and reinsurance disputes, and has testified in Great Britain as an expert witness on New York insurance law. He is certified as an arbitrator and umpire by ARIAS-US. In a recent peer survey, he was named as one of the five leading insurance / reinsurance lawyers in the US and one of the leading twenty in the world, and he was described as "dean of the bar" and "one of the best insurance arbitrators in the business."  Mr. Wollan is listed in Who's Who in American Law. He is a Colonel in the Judge Advocate General's Corps, U.S. Army Reserve (Retired), and is an honor graduate of the U.S. Army Command and General Staff College.

**FindLaw Profile**