**TO BE FILED**
**UNDER SEAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In the Matter of the Arbitration of

SECURITY INSURANCE COMPANY OF HARTFORD
Itself and as Successor in Interest to
THE FIRE AND CASUALTY INSURANCE COMPANY
OF CONNECTICUT and THE CONNECTICUT
INDEMNITY COMPANY,

Docket No. _____

Petitioner,

-against-

COMMERCIAL RISK REINSURANCE COMPANY
LIMITED (BERMUDA) and COMMERCIAL RISK RE-
INSURANCE COMPANY (VERMONT),

Respondents.

**DECLARATION OF**
**MICHELE L. JACOBSON IN**
**SUPPORT OF PETITION**
**FOR ORDER COMPELLING**
**ARBITRATION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MICHELE L. JACOBSON**, hereby declares under penalty of perjury that the following

is true and correct:

1.      I am a member of the firm of Stroock & Stroock & Lavan LLP, attorneys for

Petitioner Security Insurance Company of Hartford, Itself and as Successor in Interest to the Fire

and Casualty Insurance Company of Connecticut ("SICH"). I submit this Declaration in support

of Petitioner's motion to compel Respondents Commercial Risk Reinsurance Company Limited

(Bermuda) ("Commercial Risk Bermuda") and Commercial Risk Re-Insurance Company

(Vermont) ("Commercial Risk Vermont", together, "Commercial Risk") to arbitrate the disputes

arising under five Quota Share Reinsurance Contracts (the "Treaties") pertaining to three

insurance programs, which were consolidated by agreement of the parties, with the Umpire who

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**TO BE FILED
UNDER SEAL**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of the Arbitration of

SECURITY INSURANCE COMPANY OF HARTFORD
Itself and as Successor in Interest to
THE FIRE AND CASUALTY INSURANCE COMPANY
OF CONNECTICUT and THE CONNECTICUT
INDEMNITY COMPANY,

Docket No. _____

                             Petitioner,

                -against-

COMMERCIAL RISK REINSURANCE COMPANY
LIMITED (BERMUDA) and COMMERCIAL RISK RE-
INSURANCE COMPANY (VERMONT),

                        Respondents.

**DECLARATION OF
MICHELE L. JACOBSON IN
SUPPORT OF PETITION
FOR ORDER COMPELLING
ARBITRATION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MICHELE L. JACOBSON**, hereby declares under penalty of perjury that the following

is true and correct:

        1.     I am a member of the firm of Stroock & Stroock & Lavan LLP, attorneys for

Petitioner Security Insurance Company of Hartford, Itself and as Successor in Interest to the Fire

and Casualty Insurance Company of Connecticut ("SICH"). I submit this Declaration in support

of Petitioner's motion to compel Respondents Commercial Risk Reinsurance Company Limited

(Bermuda) ("Commercial Risk Bermuda") and Commercial Risk Re-Insurance Company

(Vermont) ("Commercial Risk Vermont", together, "Commercial Risk") to arbitrate the disputes

arising under five Quota Share Reinsurance Contracts (the "Treaties") pertaining to three

insurance programs, which were consolidated by agreement of the parties, with the Umpire who

was duly selected by Commercial Risk and SICH in accordance with the terms of those Treaties, and on June 25-29, 2007 – the dates agreed upon by the parties and the Panel.

2.      In particular, I submit this Declaration to provide the Court with the documents and facts upon which this motion is based. As counsel for SICH, I have personal knowledge of the facts set forth herein.

3.      Annexed hereto as Exhibit 1 is a true, complete, and correct copy of the Quota Share Reinsurance Contract incepting May 1, 2000 between SICH, Commercial Risk Bermuda and Commercial Risk Vermont, pursuant to which Commercial Risk Bermuda and Commercial Risk Vermont agreed to take a 90% and 10% quota share respectively of losses arising out of the HPP Workers Compensation Program, in accordance with the schedule of liabilities attached thereto as Exhibit A.

4.      Annexed hereto as Exhibit 2 is a true, complete, and correct copy of the Quota Share Reinsurance Contract incepting May 1, 2001 between SICH, Commercial Risk Bermuda and Commercial Risk Vermont, pursuant to which Commercial Risk Bermuda and Commercial Risk Vermont agreed to take a 90% and 10% quota share respectively of losses arising out of the HPP Workers Compensation Program, in accordance with the schedule of liabilities attached thereto as Exhibit A (together with Exhibit 1 hereto, the "HPP Treaties").

5.      Annexed hereto as Exhibit 3 is a true, complete, and correct copy of the Quota Share Reinsurance Contract incepting March 15, 2000 between SICH, Commercial Risk Bermuda and Commercial Risk Vermont pursuant to which Commercial Risk Bermuda and Commercial Risk Vermont agreed to take an 80% and 20% quota share respectively of the losses arising out of the NHE Workers Compensation Program, in accordance with the schedule of liabilities attached thereto as Exhibit A.

6.    Annexed hereto as Exhibit 4 is a true, complete, and correct copy of the Quota Share Reinsurance Contract incepting March 15, 2001 between SICH, Commercial Risk Bermuda and Commercial Risk Vermont pursuant to which Commercial Risk Bermuda and Commercial Risk Vermont agreed to take an 80% and 20% quota share respectively of the losses arising out of the NHE Workers Compensation Program, in accordance with the schedule of liabilities attached thereto as Exhibit A (together with Exhibit 3 hereto, the "NHE Treaties").

7.    Annexed hereto as Exhibit 5 is a true, complete, and correct copy of the Quota Share Reinsurance Contract incepting September 1, 2001 between SICH, Commercial Risk Bermuda and Commercial Risk Vermont pursuant to which Commercial Risk Bermuda and Commercial Risk Vermont agreed to take a 80% and 20% quota share respectively of the losses arising out of the ORS Workers Compensation Program, in accordance with the schedule of liabilities attached thereto as Exhibit A (the "ORS Treaty").

8.    The Treaties are identical in all material respects other than program name, quota share percentage, limits and inception date.  The Arbitration Clause in the Treaties (Article 32) provides:

> As a condition precedent to any right of action hereunder, any dispute or difference between the Company [SICH] and any Reinsurer [Commercial Risk] relating to the interpretation or performance of this Contract, including its formation or validity, or any transaction under this Contract, whether arising before or after termination, shall be submitted to arbitration.
>
> * * *
>
> Upon written request of any party, each party shall choose an arbitrator and the two chosen shall select a third arbitrator.  If either party refuses or neglects to appoint an arbitrator within thirty (30) days after receipt of the written request for arbitration, the requesting party may appoint a second arbitrator.
>
> * * *

3

> All arbitrators shall be active or retired officers of insurance or
> reinsurance companies, or Lloyd's London Underwriters, and
> disinterested in the outcome of the arbitration.
>
> \* \* \*
>
> The decision in writing of a majority of the arbitrators shall be
> final and binding upon both parties.

See Exhibits 1-2 at 18-19, Exhibits 3-4 at 16-17, Exhibit 5 at 22-23.

9.    In August 2005, SICH served Commercial Risk Bermuda and Commercial Risk
Vermont with separate Demands for Arbitration under the HPP Treaties, the NHE Treaties and
the ORS Treaty (the "Arbitration Demands") as a result of Commercial Risk's failure to pay
amounts due to SICH under the Treaties. Copies of the Arbitration Demands are annexed hereto
collectively as Exhibit 6.

10.    In accordance with the terms of the Treaties, in the Arbitration Demands, SICH
identified Martin Haber, the former Chief Legal Officer of the Continental Corporation (now
CNA), as its party appointed arbitrator for each of the disputes, and requested that Commercial
Risk appoint an arbitrator. In the cover letters transmitting the Arbitration Demands, SICH
advised Commercial Risk that it would consent to consolidation of the three disputes if
Commercial Risk so consented. A copy of one those cover letters (for NHE) is annexed hereto
as Exhibit 7.

11.    By letter dated September 15, 2005, counsel for Commercial Risk appointed
Theodor Dielmann, a former officer of Hannover Reinsurance Company, as its party appointed
arbitrator for each of the disputes. A copy of the September 15, 2005 letter is annexed hereto as
Exhibit 8. In mid-November, 2005, counsel for SICH and Commercial Risk agreed to
consolidate the three disputes into one arbitration. A copy of the November 18, 2005 letter from
SICH's counsel to Commercial Risk's counsel reflecting, inter alia, SICH's agreement to

consolidation is annexed hereto as Exhibit 9. A copy of the November 21, 2005 correspondence from Commercial Risk's counsel to SICH's counsel reflecting Commercial Risk's agreement to, inter alia, consolidation is annexed hereto as Exhibit 10.

12. In accordance with the procedure agreed upon by the parties and both Messrs. Haber and Dielmann, and as commonly done in the reinsurance industry, the parties exchanged lists of acceptable Umpire candidates, which were narrowed to one mutually acceptable Umpire candidate per party. See Exhibit 9 ("the parties will exchange lists of umpire candidates in an expeditious fashion in the Consolidated Arbitration") and Exhibit 10 ("We confirm the procedural points raised [in your letter of November 18, 2005]"). The Umpire was to be chosen from the list of the party who successfully predicted whether the last digit of the Dow Jones index on a selected day was odd or even. As part of this process, counsel for SICH and Commercial Risk jointly sent out questionnaires to all of the proposed Umpire candidates in order to ascertain whether any of them had conflicts or scheduling issues. Copies of these letters and the questionnaire are annexed as Exhibit 11.

13. Based on this agreed-upon process, on or about March 1, 2006, Mr. David Thirkill was selected to be the Umpire in this dispute.[1] A copy of Mr. Thirkill's email correspondence dated March 1, 2006 accepting the appointment and attempting to schedule an organizational meeting for later in the month is annexed hereto as Exhibit 12.

14. At the March 28, 2006 organizational meeting for the Arbitration, the party appointed arbitrators, Mr. Haber and Mr. Dielmann, and the jointly selected Umpire, Mr. Thirkill, disclosed their contacts with the parties, counsel and potential witnesses by referencing

---

[1] The Treaties also provide that "[t]he parties hereby waive all objections to the method of selection of the arbitrators, it being the intention of both sides that all the arbitrators be chosen from those submitted by the parties." Exhibits 1-2 at 19, Exhibits 3-4 at 16, Exhibit 5 at 23.

their disclosures in a simultaneously pending arbitration between the parties in which the same

Arbitrators had been selected.  See Transcript of March 28, 2006 Organizational Meeting,

annexed hereto as Exhibit 13 at 3-4 and Excerpt of Transcript of the February 22, 2006

Organizational Meeting for the "DIG Arbitration", annexed hereto as Exhibit 14 at 4-17.[2]  To

distinguish between the two simultaneously pending arbitration proceedings, the parties

denominated this Arbitration as the "Non-DIG Arbitration" and the other Arbitration as the "DIG

Arbitration."  Several months earlier, the DIG Arbitration had been scheduled for a Hearing

during the week of December 11, 2006.

     15.     After the panel members completed their disclosures, the parties formally

accepted the panel on the record in the Non-DIG Arbitration.  See Exhibit 13 at 4.  The parties

also executed a Hold Harmless Agreement, in which they stipulated that the arbitrators had been

appointed, that they found the arbitrators to be without conflicts and that they accepted the Panel.

A copy of the executed Hold Harmless Agreement is annexed hereto as Exhibit 15.  After

consultation with the parties, the Panel scheduled the Non-DIG Arbitration Hearing for the week

of March 5, 2007.  Thus, as of March 2006, the Panel in this Arbitration, as well as the DIG

Arbitration, consisted of Messrs. Haber, Dielmann, and Thirkill.

     16.     Immediately following the Organizational Meeting for the Non-DIG Arbitration,

the Panel heard oral argument on SICH's motion for pre-hearing security in both the DIG and

Non-DIG Arbitrations.  The Panel issued a single oral decision resolving both motions and

awarding pre-hearing security in the amount of the claim (less security already held by SICH),

---

[2]    Through the same process used by the parties in connection with this Arbitration, the
identical Panel had been selected previously to preside over the DIG Arbitration between the
parties under two Quota Share Reinsurance Contracts relating to the DIG Workers Compensation
Program.

without interest, in favor of SICH. The Panel followed up its oral ruling with separate pre-hearing security awards in each of the Arbitrations.

17.    In November 2006, SICH was advised that, due to the illness of Commercial Risk's party arbitrator, the DIG Arbitration Hearing would have to be postponed from the December 2006 date. The parties and the Panel thereafter agreed to conduct the DIG Arbitration Hearing during the March 2007 week originally scheduled for the Non-DIG Arbitration Hearing and re-schedule the Non-DIG Arbitration Hearing to the week of June 25, 2007. Email correspondence regarding the agreed scheduling change, which include a December 5, 2006 email to the panel, a December 29, 2006 email from the Umpire to the parties, and a January 29, 2007 email from the Umpire to the parties, are annexed hereto collectively as Exhibit 16.

18.    The DIG Arbitration Hearing proceeded as re-scheduled on March 5, 2007. On March 11, 2007, a majority of the Panel issued an Award in the amount of $20,754,990 plus interest in the amount of $1,300,000, in favor of SICH (the "DIG Award"). A copy of the DIG Award is annexed hereto as Exhibit 17.

19.    On March 20, 2007, Commercial Risk's party arbitrator, Theodor Dielmann, sent an email to the parties and the other Panel members advising that "[a]fter in-depth deliberation, I wish to withdraw as arbitrator from both the Non-DIG and DIG arbitrations (the Panel of the latter having remained constituted until all parts of the Order have been fully performed)." A copy of Mr. Dielmann's email is annexed hereto as Exhibit 18.

20.    Later that day, on behalf of the remaining panel members, the Panel's Umpire, Mr. Thirkill, acknowledged Mr. Dielmann's withdrawal as party-appointed arbitrator for Commercial Risk and requested that "Commercial Risk appoint a replacement as soon as possible." Mr. Thirkill also noted that since the Non-DIG Hearing was not scheduled to start for

7

over three months, there would be no need for a postponement unless the parties agreed otherwise. A copy of Mr. Thirkill's email is annexed hereto as Exhibit 19.

21.    Both parties responded to Mr. Thirkill's email on March 20, 2007. SICH's counsel advised that it "[did] not agree to a postponement of the hearing dates, and . . . [had] informed [Commercial Risk's counsel] Mr. Higgins that [it] fully expect[ed] that those hearing dates [would] hold firm." A copy of the March 20, 2007 email from SICH's counsel in response is included as part of Exhibit 19. Commercial Risk's counsel responded, "Thanks for this, which we have noted." A copy of the March 20, 2007 email from Commercial Risk's counsel in response is annexed hereto as Exhibit 20.

22.    Particularly in light of Mr. Dielmann's reference to "in depth deliberation" (see Exhibit 18), by letter of the same date, SICH's counsel requested that Commercial Risk's counsel disclose "the details of any information that either [it] or [its] client have, or any conversations that either [it] or [its] client have had with Mr. Dielmann concerning his actions." A copy of the March 20, 2007 letter from SICH's counsel to Commercial Risk's counsel is annexed hereto as Exhibit 21.

23.    Shortly thereafter, Commercial Risk's counsel advised SICH's counsel by letter as follows: "We will not be responding in any way to the request for information [about communications with Mr. Dielmann regarding his withdrawal]. We note your expectation and commitment to the non-DIG hearing dates." A copy of the letter dated March 20, 2007 from Commercial Risk's counsel to SICH's counsel is annexed hereto as Exhibit 22.

24.    By letter dated March 27, 2007, SICH's counsel inquired regarding the status of Commercial Risk's appointment of a replacement arbitrator, stating:

> To date, Commercial Risk Reinsurance Company Limited
> (Bermuda) and Commercial Risk Re-Insurance Company

8

(Vermont) (collectively "Commercial Risk") have not appointed a
replacement arbitrator who is available to serve on a panel during
the week of June 25, 2007, nor have you advised us of Commercial
Risk's intent to do so.

Please be advised that if we do not receive within ten (10) days,
notice of appointment of a replacement arbitrator who satisfies all
applicable requirements and is available for a hearing during the
week of June 25, 2007, we will seek court appointment of a
replacement arbitrator.

A copy of the March 27, 2007 letter from SICH's counsel to Commercial Risk's counsel is

annexed hereto as Exhibit 23.

25.     On April 1, 2007, Umpire David Thirkill wrote to Commercial Risk's counsel,

noting:

although there is still some time to go until the hearing, Mr. Haber
and I are of the opinion that the replacement for Mr. Dielmann
should be made as soon as possible.  You should, by now, have
had the opportunity of discussing the matter with Commercial
Risk.  Would you kindly advise us by Wednesday of this week
[April 4, 2007] as to the replacement.

A copy of Mr. Thirkill's April 1, 2007 email to Commercial Risk's counsel, which was copied to

SICH's counsel and Mr. Haber, is annexed hereto as Exhibit 24.

26.     On April 4, 2007, Commercial Risk's counsel advised SICH's counsel by email

that "[it would] have a letter in [their] hands tomorrow on an arbitrator for non-DIG."  A copy of

the April 4, 2007 email from Commercial Risk's counsel to SICH's counsel is annexed hereto as

Exhibit 25.

27.     By letter dated April 5, 2007, Commercial Risk advised SICH that it had

appointed Peter Gentile as arbitrator for the Non-DIG Arbitration.  Despite the fact that there was

a constituted Panel, including SICH's party appointed arbitrator Martin Haber and a jointly

selected Umpire, David Thirkill – both of whom had been accepted by the parties – Commercial

Risk requested that SICH confirm its selection of Mr. Haber as its party appointed arbitrator and

9

advised that, upon such confirmation, Mr. Gentile would contact Mr. Haber to undertake selection of a new Umpire. A copy of the April 5, 2007 letter from Commercial Risk's counsel to SICH's counsel, which was copied to Mr. Haber and Mr. Thirkill, is annexed hereto as Exhibit 26.

28.    On that same date, Commercial Risk filed a Petition in this Court in connection with the DIG Arbitration, seeking to vacate the Panel's award. Commercial Risk also filed an Order to Show Cause for a Preliminary Injunction to prevent SICH from drawing down on the pre-hearing security posted by Commercial Risk in order to satisfy a portion of the DIG Award. This Court scheduled oral argument on the Preliminary Injunction Motion for April 9, 2007.

29.    After considering papers submitted by Commercial Risk and SICH, and hearing oral argument on Commercial Risk's Motion for a Preliminary Injunction to restrain SICH from drawing down on pre-hearing security to partially satisfy the DIG Award, on April 9, 2007, this Court ruled from the bench that Commercial Risk had not satisfied any of the requirements for injunctive relief and denied Commercial Risk's motion. The Court held that:

> In view of what is at stake -- which is essentially a money dispute - - the money dispute is literally resolvable by the party that may win on the merits ultimately paying back what may have been improperly drawn down, if in fact the plaintiffs were to prevail on the merits. I don't see where that irreparable harm comes in. Plaintiffs indicate that their view of the irreparable harm enters in the issue of what they characterize as the improper or abuse of the process. Again, I'm not persuaded that that is the case here. Under the applicable doctrine, the arbitrators have a fairly extensive latitude to interpret the scope of arbitration and make appropriate rulings concerning on that scope. Those determinations ordinarily are entitled to substantial deference by the Court except as has been indicated in the cases of clear abuse of legal acts or illegal acts or other forms of impropriety.
>
> I don't believe that there is sufficient evidence that the standard has been met here. On those grounds, the issue of whether or not the arbitrators improperly excluded evidence, in my view, has not been compellingly demonstrated to the point warranting the

> extraordinary remedy not only of denial of the confirmation of
> [the] arbitration award but also of granting of preliminary
> injunctive relief.
>
> I also do not believe that the plaintiffs are likely to succeed on the
> merits given the language of the contract that is at issue here, the
> parties' agreements, and I also am not persuaded that there are
> sufficient issues going to the merits as to make the plaintiff's
> claims later on for litigation and the balance of equities tilting
> decidedly in the plaintiff's favor because the Court believes that in
> the reading of the contract that there is sufficient support in the
> underlying agreements for the posting of the letter of credit and for
> the draw down of the letter of credit absent a confirmation award.

See Exhibit 27 (Transcript of Argument and Oral Ruling on Motion for a Preliminary Injunction

in DIG matter) at 25-26.  On April 11, 2007, the Court issued a written Order on the Preliminary

Injunction Motion, a copy of which is annexed hereto as Exhibit 28.

     30.     By email dated April 9, 2007, SICH's counsel wrote to Commercial Risk's

proposed replacement arbitrator, Mr. Gentile, and requested that he complete an attached

questionnaire designed to elicit information which would determine whether he was qualified to

be an arbitrator under the terms of the Treaties.  This questionnaire was in the same format as

had been previously used by the parties in connection with Umpire selection.  A copy of the

April 9, 2007 email from SICH to Mr. Gentile, which was copied to Commercial Risk's counsel,

Mr. Haber and Mr. Thirkill, is annexed hereto as Exhibit 29.

     31.     On April 10, 2007, Commercial Risk's counsel wrote to SICH's counsel advising

that Mr. Gentile would not fill out the questionnaire and provide the requested information at that

time, because "[such disclosure] should await the complete constitution of the new panel."

Acknowledging that SICH had previously appointed an arbitrator in accordance with the

Treaties' terms in its Arbitration Demand, while ignoring that an Umpire had been duly selected

in accordance with the terms of the Treaties, Commercial Risk noted that it had "asked Mr.

Gentile to contact Mr. Haber about third arbitrator selection under the treaty."  Commercial

11

35.    Given that SICH has already designated Mr. Haber as its Arbitrator in accordance with the provisions of the Treaties, and the parties selected Mr. Thirkill in accordance with the provisions of the Treaties, there is no legal or factual basis for Commercial Risk's refusal to proceed with the Non-DIG Arbitration, with the existing, duly selected and agreed-upon Umpire on the June 25-29, 2007 dates previously agreed to by the parties and the Panel.

36.    Commercial Risk should not be permitted to further delay payment of its long delinquent obligations to SICH by orchestrating the recommencement of this Arbitration ab initio.  Since the Panel ordered Commercial Risk to post security in March 2006, it has neither heard nor considered any motions.  At the time of Mr. Dielmann's withdrawal, there were no matters sub judice before the Panel and, to date, the Panel has not been presented with any evidence.  There would be no prejudice to Commercial Risk by virtue of its proceeding with the Non-DIG Arbitration with Mr. Gentile as its substitute party appointed arbitrator.[3]

37.    In contrast, SICH would be prejudiced by the further delay caused by Commercial Risk's strategy to insist on re-appointment of existing Arbitrators.  Indeed, this Arbitration was already postponed for nearly four months from its originally scheduled hearing date to accommodate the schedule of Commercial Risk's initially appointed arbitrator, Mr. Dielmann.

38.    Commercial Risk should not be given the opportunity to re-start the Arbitration process anew.  For all the foregoing reasons, and the reasons set forth in the Petition, the Affidavit of Eugene Wollan and the accompanying Memorandum of Law, SICH respectfully

---

[3]    As SICH has not been provided with disclosures by Mr. Gentile at this time (despite its request therefor), it is not able to accept him presently without qualification.  However, in the event, and assuming for the purposes of this application, that Mr. Gentile is conflict free and can proceed in an unbiased fashion, SICH would proceed with a Panel consisting of Mr. Haber, Mr. Gentile and Mr. Thirkill.

requests that this Court issue an Order compelling Commercial Risk to arbitrate this matter with

Mr. Thirkill as the Umpire at a Hearing to commence on June 25, 2007.

Dated: New York, New York
      April 24, 2007

                                         MICHELE L. JACOBSON